UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

BYRON LEWIS BLACK                    )
                                     )
v.                                   )        NO. 3:00-0764
                                     )        JUDGE CAMPBELL
                                     )        DEATH PENALTY CASE
RICKY BELL                           )

## MEMORANDUM

## I. Introduction

Pending before the Court is the Respondent's Motion To Dismiss And For Summary

Judgment (Docket No. 113). Petitioner has filed a response (Docket No. 120) to the Motion, and

the Respondent has filed a reply (Docket No. 126).[1]

For the reasons set forth below, the Motion is GRANTED, and this action is

DISMISSED.

## II. Factual and Procedural Background

A. The Federal Court Proceedings

Pursuant to 28 U.S.C. § 2254, Petitioner filed a Petition seeking habeas relief in this case

on August 14, 2000. (Docket No. 1). After appointment of counsel, Petitioner filed an Amended

Petition For Writ Of Habeas Corpus (Docket No. 8) raising numerous grounds, including an

Eighth and Fourteenth Amendment claim that execution of the Petitioner would be cruel and

unusual punishment because he is mentally retarded. The Court subsequently granted summary

_____

[1] Respondent has also filed a Request For Waiver Of M.D. Tenn. Local Rule 56.01(b)
(Docket No. 115), which requires that a movant file a list of undisputed material facts in support
of its motion for summary judgment. Given the posture of this case and the standards applicable
to deciding the issues presented, the Court concludes that the requirements of the local rule
should be waived. Therefore, the Request is GRANTED.

judgment to Respondent on all claims, including the mental retardation claim. (Docket Nos. 82, 83).

The Petitioner filed an appeal, and while the case was pending, the United States Supreme Court issued its decision in Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). In Atkins, the Supreme Court held that executing a mentally retarded person violates the Eighth Amendment's ban on cruel and unusual punishment. The Court left to the states, however, "the task of developing appropriate ways to enforce the constitutional restriction" upon their execution of sentences. 122 S.Ct. at 2252.

After Atkins was issued, the Sixth Circuit Court of Appeals held its appeal in this case in abeyance pending a decision by the Tennessee courts on whether Petitioner is mentally retarded. After an evidentiary hearing, the state trial court held that Petitioner is not mentally retarded, and that decision was affirmed on appeal by the Tennessee Court of Criminal Appeals. Black v. State of Tennessee, 2005 WL 2662577 (Tenn. Crim. App. Oct. 19, 2005). The Tennessee Supreme Court denied Petitioner's application for permission to appeal. Id. The Sixth Circuit subsequently remanded the case back to this Court for reconsideration of Petitioner's mental retardation claim in this case in light of Atkins. (Docket No. 97).

B. State Court's Decision on Atkins Claim

As described above, the Tennessee Court of Criminal Appeals reviewed the evidence presented to the trial court and agreed with its decision that Petitioner had failed to satisfy the criteria to be deemed mentally retarded. Black v. State, 2005 WL 2662577, at *18 (Oct. 19, 2005). As the court described, during the post-conviction proceedings, Petitioner presented the testimony of four lay witnesses, three expert witnesses, the affidavit of an additional expert

witness, and numerous exhibits. Id., at *2. The State presented the testimony of two expert witnesses. Id.

After reviewing the evidence presented, the court explained that the applicable criteria to be used by a court in making a determination of mental retardation are those set forth in Tennessee Code Annotated Section 39-13-203:

> (a) As used in this section, "mental retardation" means:
>
>> (1) Significantly subaverage general intellectual functioning as evidenced by a functional intelligence quotient (I.Q.) of seventy (70) or below;
>>
>> (2) Deficits in adaptive behavior; and
>>
>> (3) The mental retardation must have been manifested during the developmental period, or by eighteen (18) years of age.

The court pointed out that all three criteria must be satisfied to establish mental retardation. Id., at *12.

In considering application of the first criterion, the court noted that the Petitioner's intelligence had been tested "no fewer than nine times," and summarized the test results as follows:

> Petitioner's test scores have decreased as he has aged. During his childhood, he tested with scores in the eighties and nineties. Prior to trial and his initial post-conviction proceedings, Petitioner's own experts testified that his I.Q. score was above seventy. Only recently has Petitioner's I.Q. score fallen below seventy. Petitioner's experts testified that his adult scores fell within the mentally retarded range when adjusted by the standard error of measurement and/or the Flynn Effect. However, our supreme court has held that the I.Q. score of seventy in Tennessee Code Annotated section 39-13-203 is a 'bright-line cutoff' and must be met. Howell, 151 S.W.3d at 456, 458-59 [Howell v. State, 151 S.W.3d 450 (Tenn. 2004)]. As the Howell Court stated: '[T]he statute should not be interpreted to make allowance for any standard error of measurement or other circumstances whereby a person with an I.Q. above seventy could be considered mentally

3

retarded.' <u>Id.</u> at 456.

<u>Id.</u>, at *13-14.

In applying the second criterion, the court explained that "adaptive functioning" refers to "'how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, socio-cultural background, and community setting.'" <u>Id.</u>, at *15 (quoting <u>Van Tran v. State</u>, 66 S.W.3d 790, 795 (Tenn. 2001)). The court reviewed the testimony of the lay and expert witnesses on this issue, but did not make a definitive determination about whether Petitioner had met the second criterion.

In applying the third criterion, the court explained that Petitioner must prove that he had an I.Q. below seventy and had deficits in adaptive behavior that manifested themselves prior to age eighteen. <u>Id.</u>, at *17. Reviewing the proof, the court determined that Petitioner had failed to make such a showing:

> None of Petitioner's I.Q. scores were below seventy prior to age eighteen.
>
> * * *
>
> Although Petitioner's experts maintain that his mental retardation is a result of his mother's drinking of alcohol while she was pregnant, the proof in the record simply does not support that Petitioner's I.Q. was below seventy or that Petitioner had deficits in his adaptive behavior prior to age eighteen.

<u>Id.</u>, at *17. Thus, the court held that because Petitioner had failed to prove mental retardation by a preponderance of the evidence, his death sentence would not be set aside. <u>Id.</u>

III. <u>Analysis</u>

4

A.  Scope of Remand

The Respondent seeks dismissal of certain amendments made to the petition after remand

by the Sixth Circuit as being beyond the scope of the remand order.[2]

The Sixth Circuit's remand order, in its entirety, provides as follows:

On motion of Petitioner-Appellant filed September 6, 2006, this case is
remanded to the district court for the limited purpose of reconsidering Petitioner-
Appellant's mental retardation claim in light of Atkins v. Virginia, 536 U.S. 304
(2002).

(Docket No. 97).

At the time of remand, the mental retardation claim appeared at Paragraphs 14. a. and 14.

b. of Petitioner's first Amended Petition (Docket No. 8) and stated as follows:

14.     Execution of Byron Black violates the Eighth and Fourteenth
Amendments, because Byron Black is mentally retarded:

a.  Byron Black's functional intelligence quotient (I.Q.) is
significantly subnormal.  His I.Q. is 69.

b.  Byron Black also suffers from numerous cognitive deficits and
deficits in adaptive behavior, which include, but are not limited to:

1) inappropriate social behavior, including e.g.,
inappropriate affect and smiling;
2) perseveration;
3) dysnomia, i.e., inability to name items;
4) primitive defense mechanisms;
5) a childlike understanding of himself and lack of insight;
6) concrete thinking;
7) lack of mental flexibility;
8) memory problems; and

---

[2]     In evaluating a motion to dismiss, the Court is to "construe the complaint in the light
most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and
determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims
that would entitle him to relief." Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC, 477
F.3d 383, 389 (6th Cir. 2007).

5

9) inability to organize items within his memory.

(Docket No. 8).

After remand, the Petitioner filed an Amendment To Petition For Writ Of Habeas Corpus (Docket No. 110), which added the following: a claim for ineffective assistance of counsel for failure to investigate and properly present evidence of Petitioner's mental retardation (¶ 11. v. 3); several paragraphs describing the proof supporting the Eighth and Fourteenth Amendment mental retardation claim (¶ 14. c., d.); a claim based on the Sixth, Eighth and Fourteenth Amendments and Ring v. Arizona, 536 U.S. 584 (2002) that the State is required to prove the absence of mental retardation beyond a reasonable doubt (¶ 14. e.); a claim based on the Sixth and Fourteenth Amendments, Ring, Atkins and Tennessee law that the Petitioner is entitled to a jury trial on the issue of whether he was ineligible for the death penalty because he is mentally retarded (¶ 14. f.); and a claim based on the Sixth, Eighth and Fourteenth Amendments, Ring, and Atkins that the Petitioner is entitled to a new jury to decide both the mental retardation issue and whether the death penalty should be imposed (¶ 14. g.).

Respondent argues that Petitioner should not be allowed to add any of these amendments to his petition because consideration of these amendments would exceed the scope of the remand. Petitioner argues, on the other hand, that the amendments should be considered because they all arise out of the decision in Atkins, and were not ripe for consideration until Atkins was decided.

Based on the language of the Sixth Circuit's Order remanding this case, the Court concludes that it is limited to "reconsidering Petitioner-Appellant's mental retardation claim" as that claim was fashioned at the time of remand. As set forth above, Petitioner's mental

6

retardation claim, at the time of remand, was based on the Eighth and Fourteenth Amendments. Therefore, the paragraphs of the Amendment that purport to add constitutional claims based on other constitutional amendments and theories are not within the scope of the remand, and are accordingly dismissed. These include the following: ¶¶ 11. v. 3, 14. e., f., and g. (Docket No. 110, at pp. 1, 12-14). The paragraphs of the Amendment describing the proof supporting the Eighth and Fourteenth Amendment mental retardation claim (¶ 14. c., d.), however, simply describe the factual support for Petitioner's original mental retardation claim, and therefore, are within the scope of the remand.

In summary, the claims that are within the scope of the Sixth Circuit's remand appear at Paragraphs 14. a., b., c., and d. All other claims set forth in the Amended Petition are dismissed as beyond the scope of the remand.

B. <u>Mental Retardation Claim</u>

1. <u>AEDPA</u>

The Respondent seeks summary judgment as to Petitioner's mental retardation claim,[3] and takes the position that the Court must review the claim in accordance with the standards set

---

[3] Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment may be rendered if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); <u>Abdulnour v. Campbell Soup Supply Co., LLC</u>, 502 F.3d 496, 501 (6th Cir. 2007). In order to prevail, the movant has the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In determining whether the movant has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. <u>Matsushita Electric Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); <u>Abdulnour</u>, 502 F.3d at 501.

7

forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA, which amended 28 U.S.C. § 2254, applies to all habeas petitions filed after April 24, 1996, the effective date of the Act. Mitchell v. Mason, 257 F.3d 554, 560-61 (6th Cir. 2001). As Black's Petition was filed on August 14, 2000, and after the effective date, this case is governed by AEDPA.[4]

Under AEDPA, when a claim is addressed on the merits by a state court, a federal court may grant habeas relief as to that claim only if the state court's adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). With respect to the state court's factual determinations, the factual findings of a state court are presumed to be correct, and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

In Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000), the Supreme Court held that a state court decision is "contrary to" Supreme Court precedent if either the "state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts."

The Williams Court held that a state court decision involves an "unreasonable

---

⁴ The Petitioner argues that AEDPA should not apply in this case because Atkins announced a new rule of substantive law which prohibits the imposition of a death sentence as to a defendant found to be mentally retarded. Petitioner has cited no authority adopting such a theory, and the Court is not persuaded that such a theory should be applied here.

application" of clearly established law if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the petitioner's case. Id. The reasonableness of the state court's opinion is judged by an objective rather than a subjective standard. 120 S.Ct. at 1521-22.

2. State court process

The Petitioner argues that the decision of the state courts on Petitioner's Atkins claim is due no deference under AEDPA because the state court proceedings did not comport with due process requirements. Petitioner cites Panetti v. Quarterman, ___ U.S. ___, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007) and Rivera v. Quarterman, 505 F.3d 349 (5th Cir. 2007) in support of his argument. In Panetti, the Supreme Court held that a state court decision rejecting the defendant's threshold showing of insanity under Ford v. Wainwright, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) was entitled to no deference under AEDPA because the state court failed to provide the defendant with a constitutionally adequate opportunity to be heard as required by Ford. The state court rejected the defendant's threshold showing of insanity under Ford after receiving reports from court-appointed experts to which the petitioner was not given an opportunity to respond. 127 S.Ct. at 2857. The state court also refused to transcribe its proceedings, on repeated occasions conveyed information to defense counsel that turned out not to be true, provided at least one significant update to the state without providing the same notice to the defendant, and failed to provide a competency hearing. 127 S.Ct. at 2856-57.

In Rivera, the Fifth Circuit, citing Panetti, held that the state court's rejection of petitioner's Atkins claim for failure to make a prima facie showing of mental retardation was not entitled to deference under AEDPA. 505 F.3d at 356-61. The court explained that the petitioner

9

need only make a prima facie showing of mental retardation under <u>Atkins</u> in order to trigger the state court's obligation to provide him with the opportunity to develop his claim, and that the state court's summary rejection of the claim was unreasonable. 505 F.3d at 358.

The facts of both these cases are easily distinguishable and do not support Petitioner's suggestion that the state court ignored due process requirements in considering his mental retardation claim.  In considering the Petitioner's mental retardation claim in this case, the state trial court held a two-day evidentiary hearing at which Petitioner was permitted to call three expert and four lay witnesses, submit the affidavit of an additional expert witness, submit numerous exhibits, cross examine the State's witnesses, interpose objections, and present written and oral arguments.  <u>Black v. State</u>, 2005 WL 2662577 (Tenn. Crim. App. Oct. 19, 2005).  The Court concludes that that the state court afforded the Petitioner an adequate opportunity to be heard on his mental retardation claim.

Petitioner also argues that the state court's decision is "arbitrary, unreasonable, unfair, and flies in the face of science" because the court refused to consider standard errors in test measurement,  the "Flynn Effect," permitted the State's experts to testify, and placed the burden of proof on the Petitioner.

In reviewing the state trial court's decision, the Tennessee Court of Criminal Appeals considered Petitioner's proof and argument regarding the standard error of measurement and the Flynn Effect:

> Petitioner's experts, Dr. Grant specifically, also concluded that Petitioner's previous adult I.Q. scores fell within the mentally retarded range, seventy or below, when adjusted by the standard error of measurement and the Flynn Effect. Dr. Grant explained that according to the Flynn Effect, people acquire more information and knowledge over time, which in turn requires that the I.Q. tests be renormed to reflect the gain of knowledge. According to Dr. Grant, the previous

10

tests given to Petitioner during his adulthood had not been renormed in years, which caused Petitioner's I.Q. score to be inflated.

Black v. State, 2005 WL 2662577, at * 14.[5] Susan Vaught, one of the State's experts, testified that clinicians are aware of the Flynn Effect, but that they do not adjust I.Q. scores based on it. Id., at *8, 10. She, and the State's other expert, Eric Engum, also testified that I.Q. tests have historically been biased against minorities in that they tend to underestimate the intelligence of minorities. Id., at *7, 10.

The court was ultimately unpersuaded that Petitioner's test scores should be adjusted downward based on the Flynn Effect and the standard error of measurement. As described previously, the court explained that the Petitioner's test scores were in the eighties and nineties during his childhood, and before trial and his first post-conviction proceeding, his own experts testified that they were above seventy. Id., at *14. The court recognized that Petitioner's experts found his more recent I.Q. scores to fall below seventy within the mentally retarded range by adjusting them for the standard error of measurement and/or the Flynn Effect. Id. The court rejected this adjustment of the test scores, however, based on the Tennessee Supreme Court's decision in Howell v. State, 151 S.W.3d at 458-59.

In Howell, the Tennessee Supreme Court held, as a matter of statutory construction, that the Tennessee legislature intended to establish a bright-line cutoff point for determining mental

_____

[5]   In addition to the expert proof introduced during the state proceeding, Petitioner also relies on the Declaration of Marc J. Tassé (Exhibit 1 to Petitioner's Opposition To Motion To Dismiss And For Summary Judgment (Docket No. 120)), to support his argument that the Flynn Effect should be adopted and used to reduce Petitioner's test scores. Neither Dr. Tassé's Declaration, nor the other evidence submitted by Petitioner that was not presented to the state court persuade the Court that the state court decision regarding the issue of mental retardation was unreasonable.

11

retardation in the death penalty context, rather than using a range of I.Q. scores that would take into account measurement errors in the testing process, noting that the latter approach was used by the state in the social services context. Id., at 458-59.[6]

Other courts have considered the issue of whether to adjust test scores for the Flynn Effect or the standard error of measurement, but none has held that Atkins requires such an adjustment. In Ledford v. Head, 2008 WL 754486 (N.D. Ga. March 19, 2008), the District Court for the Northern District or Georgia rejected use of the Flynn Effect as a basis for reducing the petitioner's I.Q. scores:

> There was testimony at the hearing that the Flynn effect is a 'generally recognized phenomenon,' but experts for both petitioner and respondent agreed that it is not used in clinical practice to reduce IQ scores. . . Both Dr. King and Dr. Zimmermann testified that they have never seen it utilized except in capital cases. . .

Id., at *7. The court also rejected petitioner's argument that his I.Q. scores should be reduced to account for the standard error of measurement:

> The Court recognized that 'standard error of measurement' is a generally accepted scientific concept. . . But the standard error of measurement simply means that an IQ score can overestimate or underestimate a person's true level of intellectual functioning. . . there is no basis for assuming that the standard error of measurement lowered petitioner's score enough to meet Georgia's mental retardation standard [of an I.Q. score of 70 or below]. . . Petitioner's IQ could just as likely be 80 as 68. . .

Id., at *8.[7] Cf. Bowling v. Commonwealth of Kentucky, 163 S.W.3d 361, 375 (Ky.,

---

[6]    In reaching its decision, the court noted that some states have similar statutes, while other states do not include specific numerical I.Q. scores in defining mental retardation. Id., at 459.

[7]   The court also implicitly rejected any upward adjustment for the test bias against minorities.

Case 3:00-cv-00764   Document 127   Filed 04/24/08   Page 12 of 21 PageID #: 608

2005)(Court holds that Kentucky statute defines mental retardation using a bright-line cut-off ceiling of an I.Q. of 70 and Atkins did not discuss or require consideration of margins of error or the Flynn Effect) with Ohio v. Burke, 2005 WL 3557641, at *12-14 (Ohio App. Dec. 30, 2005)(Court explains that it is required to consider the Flynn Effect and the standard error of measurement in determining mental retardation under Ohio law, but it is not required to accept those theories).

The Fourth Circuit has rejected the suggestion that Atkins requires the states to accept the Flynn Effect or the standard error of measurement in determining mental retardation. See Green v. Johnson, 515 F.3d 290, 300 n.2 (4th Cir. 2008)(". . . neither Atkins nor Virginia law appears to require expressly that these theories [the Flynn Effect and the standard error of measurement] be accounted for in determining mental retardation status.").  See also Walton v. Johnson, 440 F.3d 160, 178 (4th Cir. 2006)(Rejecting as speculative petitioner's argument that the standard error of measurement would lower his score rather than increase it.)

Petitioner cites Walker v. True, 399 F.3d 315 (4th Cir. 2005) to support his argument that his scores should have been reduced based on these theories.  The court in Walker, however, held only that the district court should have permitted expert testimony about the theories; it did not hold that the theories should be accepted to reduce the petitioner's scores. See Green, 515 F.3d at 300 n. 2 ("To the extent that we held in Walker that the district court was required to consider the Flynn effect on remand, that case involved de novo consideration of the inmate's Atkins claim.").

The Court is not persuaded that the state court's failure to accept Petitioner's arguments about the Flynn Effect and the standard error of measurement rendered the state process

13

arbitrary, unreasonable, or less than full and fair.

The Petitioner also argues that the process he received in state court was not full and fair because the state court should have excluded the State's expert witnesses. Petitioner's principal objection to consideration of the testimony of the State's experts, Dr. Vaught and Dr. Engum, is the experts' failure to personally evaluate the Petitioner.

In recounting the testimony of Dr. Engum, the Court of Criminal Appeals noted that he did not conduct his own testing of the Petitioner, but relied on Petitioner's previous test results. The court stated that "Dr. Engum further explained that he did not conduct additional testing because he believed Petitioner was probably 'test-wise' or 'test-weary.' 2008 WL 2662577, at *6. The court also recognized that Dr. Vaught did not personally evaluate the Petitioner:

> Dr. Vaught candidly admitted that she neither personally interviewed nor tested Petitioner. She explained that she did neither for several reasons. One, she had been given voluminous records to review, and after her review of the records, she did not believe Petitioner met either the second or third criteria for mental retardation. Further, she saw a pattern of the scores on the I.Q. tests descending. She had also reviewed Dr. Jaros' report and believed that some organic results had occurred recently in Petitioner's life, and her findings would be skewed by such. It was also Dr. Vaught's opinion that as a result of the organic problems from which Petitioner was suffering, he would require clinical testing in the near future as a part of his diagnosis and treatment, and it was her belief that if she tested him, it would skew the results for the next clinician. Dr. Vaught further explained that she believed Petitioner had become savvy to the testing.

Id., at *9.[8]

---

[8] The state court also noted Dr. Vaught's testimony on cross examination that "she is very liberal in assessing a person to qualify for services as a result of mental retardation:"

> She stated: 'If I could possibly put somebody in for services that they need, I'm going to do it.' She then testified that she had cautioned counsel for the State when he approached her for taking the case that if she could find that Petitioner is mentally retarded and keep him from being executed, she was going to do it.

14

The Court is not persuaded that the state court's failure to exclude the State's witnesses rendered the proceeding unfair. The Petitioner's criticism of the State's experts is relevant to the weight to be given to their testimony, but does not support the total exclusion of their testimony. The court was not unreasonable in admitting the expert proof, especially given the court's obvious consideration and weighing of the Petitioner's criticism of the experts.

Petitioner also argues that the state court process was unfair because the court placed the burden of proving mental retardation on the Petitioner rather than the State. The state court considered Petitioner's burden of proof argument, but rejected it as having already been decided by the Tennessee Supreme Court in <u>Howell</u>. <u>Id.</u>, at *18.

In <u>Howell</u>, 151 S.W.3d at 466, the Tennessee Supreme Court explained that neither <u>Ring</u> nor <u>Apprendi</u> requires the state to prove the absence of mental retardation because it is not an element of the offense, and a finding of mental retardation "works to reduce the maximum possible sentence . . . from death to life imprisonment." Other state and federal courts agree with this conclusion. <u>See</u> <u>United States v. Webster</u>, 421 F.3d 308, 311-12 (5th Cir. 2005)(Neither <u>Atkins,</u> <u>Apprendi</u>, nor <u>Ring</u> requires the government to prove the absence of mental retardation of a federal capital defendant); <u>Walker v. True</u>, 399 F.3d 315, 325-26 (4th Cir. 2005)(State does not have burden to prove that a defendant is not mentally retarded); <u>In</u> <u>re</u> <u>Kia Levoy Johnson</u>, 334 F.3d 403, 405 (5th Cir. 2003); <u>State v. Lott,</u> 97 Ohio St.3d 303, 307, 779 N.E.2d 1011, 1015-16 (Ohio 2002). <u>See</u> <u>also</u> <u>Median v. California</u>, 505 U.S. 437, 449, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992)(State may presume a defendant to be competent and may require defendant to carry

_____

<u>Id.</u>, at *10.

burden of proving incompetence by a preponderance of the evidence).

The Court concludes that requiring the Petitioner to bear the burden of proving mental retardation by a preponderance of the evidence was not unreasonable or unfair, and did not violate Petitioner's due process rights.

### 3. State Court Findings and Conclusions

Next, Petitioner argues that the state court's findings and conclusions are deserving of no deference by this Court under Sections 2254(d) and (e)(1) because they are objectively unreasonable. He contends that the state court's erroneous factual assertions entitle him to habeas corpus relief, or at a minimum, a hearing in this Court.[9]

The Petitioner argues that the state court was unreasonable in making the following statement: "However, there is no proof in the record that Petitioner was unable to do these things." 2008 WL 2662577, at *15. The statement comes at the end of a paragraph in which the court is discussing the proof offered on the second criterion the Petitioner must meet to prove mental retardation – that he has deficits in adaptive behavior. In this paragraph, the court is

---

[9] Petitioner also argues that Sections 2254(d) and (e) should not be construed to limit the federal court's determination of a constitutional claim even though that claim was adjudicated on the merits in the state court. Petitioner contends that these sections merely prohibit a court from granting habeas relief on a state-adjudicated claim, but they do not prohibit the Court from engaging in a *de novo*, independent analysis of that claim.

As for factual findings, the Petitioner argues that if the federal court is reviewing the same record that was before the state court, the federal court may review the state court's factual findings for objective reasonableness, rather under a presumption of correctness standard.

The Court finds it unnecessary to determine the validity of Petitioner's argument because even applying the analysis he suggests, the Court concludes that the state court's factual findings are objectively reasonable. Applying Tennessee law on mental retardation, as required by Atkins, to those facts, and the facts the Petitioner submits to augment the record in the state court, the Court concludes that Petitioner has not established a constitutional violation.

16

discussing the testimony of Petitioner's expert, Dr. Grant:

> Dr. Grant tested Petitioner on the independent living scale and found Petitioner had problems with managing money, managing a home, transportation, and health and safety. Dr. Grant further concluded that Petitioner met the criteria for deficits in adaptive behavior as set forth in both the DSM-IV and the AAMR. As support for his conclusion, Dr. Grant pointed to the fact that Petitioner had never lived independently, cooked, cleaned the house, did laundry, participated in the care of his son, contributed financially to his family, or had a bank account. However, there is no proof in the record that Petitioner was unable to do these things.

Id.

Petitioner interprets the last sentence of the paragraph as stating there was "no proof" that the Petitioner was unable to live independently, cook, clean, do laundry, participate in the care of his son, contribute financially to his family, or maintain a bank account. Read in context, however, it is clear that the state court was pointing out a limitation in the Petitioner's proof – the proof indicated that he *had not* performed these tasks, not that he *could not* perform these tasks. Petitioner does not point to evidence that the state court was wrong about that conclusion. Thus, the Court is not persuaded that this statement renders the state court's decision unreasonable.

Petitioner also argues that the state court was unreasonable in making the statement that ". . . the proof in the record simply does not support that Petitioner's I.Q. was below seventy or that Petitioner had deficits in his adaptive behavior prior to age eighteen." Id., at *17. Petitioner argues that the state court was unreasonable in concluding that there was no proof in the record that Petitioner's I.Q. was below seventy prior to age eighteen because he had presented proof of prenatal brain damage, as well as a score in the first percentile on a Differential Aptitude Test ("DAT") taken before age 18.

With respect to the proof of prenatal brain damage, the evidence before the state court

17

was that the current evidence of brain damage in the Petitioner may or may not indicate that such brain damage existed and caused mental retardation in the Petitioner prior to age 18.[10]  As for the DAT score, the Petitioner points to no persuasive evidence indicating that an "aptitude" test should be considered as equivalent to an I.Q. test.  Thus, the Court concludes that the state court was not unreasonable in stating that the proof in the record did not support the conclusion, under a preponderance of the evidence standard, that Petitioner's I.Q. was below seventy before age 18.

    4.  <u>Right to Jury Trial</u>

Finally, relying on the Supreme Court's decision in <u>Ring</u>, Petitioner argues that he was denied his constitutional right to a jury trial by the state court.  Although the Court finds this claim, standing alone, to be beyond the scope of the remand, the Court will address the issue as it relates to the constitutionality of the state court's proceedings in determining mental retardation.

In rejecting Petitioner's argument that he was entitled to submit the <u>Atkins</u> mental retardation issue to a jury, the state court relied on the Tennessee Supreme Court's decision in <u>Howell</u>. In <u>Howell</u>, the court held that <u>Ring</u> did not require a jury to determine mental

---

[10]  The state court pointed out that Dr. Albert Globus admitted on cross examination that Petitioner was never evaluated by a medical professional because of a head injury received while playing football during his youth; that the cause of mental retardation cannot be determined with certainty; and that it cannot be determined with certainty that the ingestion of alcohol during pregnancy (by Petitioner's mother) will cause mental retardation. <u>Id.</u>, at *5.

    The state court also pointed out that although Dr. Ruben Gur testified that the Petitioner had suffered brain damage likely caused by fetal alcohol syndrome or a series of minor head injuries, he was unable to rule out other causes, and could not specify a date certain when Petitioner's brain damage occurred. <u>Id.</u>, at *10-11.

    The court also noted Dr. Vaught's testimony explaining the difference between mental illness and mental retardation, and her conclusion that Petitioner's early difficulties were likely caused by mental health issues or learning disabilities, rather than mental retardation. <u>Id.</u>, at *8-10.

retardation:

> Under Tennessee's capital sentencing scheme, a jury determines guilt and also, in a separate proceeding, determines whether to impose the death penalty. <u>See</u> Tenn.Code Ann. § 39-13-204 (2003). This sentencing scheme is qualitatively different from the Arizona statute in <u>Ring</u>. Under the Arizona law at issue in <u>Ring</u>, the maximum penalty for murder was death; . . . however, this sentence could only be imposed if the judge, not the jury, found aggravating factors present to support the death penalty. . . .

> In contrast, under Tennessee's capital sentencing scheme, it is the jury, the very same jury, in fact, that found the defendant guilty, that decides whether to impose the death penalty. Tenn.Code Ann. § 39-13-204 (2003). In its deliberations, the jury is instructed to consider 'any evidence tending to establish or rebut the aggravating circumstances ... and any evidence tending to establish or rebut any mitigating circumstances.' Tenn.Code Ann. § 39-13-204(c) (2003). Diminished mental capacity is among the mitigating factors that may by weighed against aggravating factors by the jury. <u>See</u> Tenn.Code Ann. section 39-13-204(j). However, mental retardation is now a threshold issue that determines whether a defendant is eligible for capital punishment at all. Following <u>Van Tran</u> and <u>Atkins</u>, mental retardation completely exempts a defendant from capital punishment, rather than simply being among the mitigating factors to be weighed against aggravating factors by the jury.

> The United States Supreme Court, in <u>Atkins</u>, pointedly expressed that mental retardation should be considered apart from mitigating factors. The Court stated 'mentally retarded defendants [are less able] to make a persuasive showing of mitigation in the face of ... aggravating factors.' <u>Atkins</u>, 536 U.S. at 320, 122 S.Ct. 2242. The Court went on to state that the demeanor of mentally retarded defendants may give the false impression of lack of remorse. <u>Id</u>. at 321, 122 S.Ct. 2242. This reasoning was also evident in <u>Van Tran</u>, in which we found that 'the limitations and impairments associated with mental retardation warrant more consideration than simply allowing the evidence to be weighed in the mix of aggravating and mitigating circumstances.' 66 S.W.3d at 810. The Tennessee General Assembly apparently agrees, as evidenced by its placing the prohibition on executing mentally retarded individuals in Tennessee Code Annotated section 39-13-203 rather than placing it among the mitigating factors listed in Tennessee Code Annotated section 39-13-204(j). Accordingly, the petitioner's reliance upon <u>Ring</u> is misplaced, as the issue is not one of aggravating or enhancing factors, but of eligibility for the sentence imposed by a jury.

151 S.W.3d at 465-66.

> Other courts have considered this issue and agree that there is no constitutional right to a

19

jury trial on the issue of mental retardation. See In re Kia Levoy Johnson, 334 F.3d 403 at 405; Walker v. True, 399 F.3d at 325-26. See also Schriro v. Smith, 546 U.S. 6, 126 S.Ct. 7, 163 L.Ed.2d 6 (2005)(Ninth Circuit Court of Appeals exceeded authority in ordering Arizona courts to conduct a jury trial to resolve habeas petitioner's mental retardation claim).

This Court agrees with this analysis, and concludes that Petitioner's jury trial argument is without merit.

IV.  Conclusion

For the reasons set forth above, the Respondent's motion to dismiss and/or for summary judgment is granted.

Should the Petitioner give timely notice of an appeal from this Memorandum and accompanying Order, such notice shall be treated as an application for a certificate of appealability, 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). The Supreme Court has held that where a district court has rejected a petitioner's constitutional claims on the merits, in order to obtain a certificate of appealability, the petitioner "must demonstrate that reasonable jurists would find the district court's assesment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000).  Where a district court denies a claim on procedural grounds, a certificate of appealability should issue "when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id..

The Court concludes that Petitioner has made a substantial showing of the denial of a constitutional right as to his mental retardation claim, and reasonable jurists could find the

20

Court's assessment of the constitutional claim debatable.  See, e.g., Castro v. United States, 310

F.3d 900 (6th Cir. 2002).  Accordingly, the Court will issue a certificate of appealability on

Petitioner's mental retardation claim under Atkins v. Virginia, 536 U.S. 304 (2002).

It is so ORDERED.

TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE